Jack **KALPAKOFF**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 13938.

United States Court of Appeals
Ninth Circuit.

Dec. 17, 1954.

Rehearing Denied Jan. 26, 1955.

---

J. B. Tietz, Los Angeles, Cal., Hayden C. Covington, Brooklyn, N. Y., for appellant.

Laughlin E. Waters, U. S. Atty., Mark P. Robinson, Manuel Real, Manley J. Bowler, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, BONE and POPE, Circuit Judges.

PER CURIAM.

Kalpakoff was indicted for refusing to report for induction as required by the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq. Like the appellant in Mason v. United States, 9 Cir., 1954, 218 F.2d 375, Kalpakoff, after being ordered to report for induction, failed to do so and this prosecution followed.

██ As in the case of Mason, Kalpakoff first contends that there was no proof that a valid order to report for induction had been issued. The record here shows that after appellant had been placed in Class I-A, as eligible for unlimited military service, by both his local Selective Service board and the appeal board, and after he had been notified by his local board of this classification, he was ordered to report for induction. This order was dated May 27, 1952; it directed him to report at the Armed Forces induction station at a stated address in Los Angeles at 8 A.M. on the 10th day of June, 1952.

The duplicate of this order in the Selective Service file, which is executed on a printed form, SSS Form 252, is not signed. Below the blank line provided for signature appears the printed words: "Member of Local Board". Kalpakoff, on May 28, 1952, the day following the mailing of his notice of induction, wrote the board a long letter protesting his classification. Under date of May 29, 1952, he wrote to the board acknowledging receipt of the order to report for induction and requesting that his induction date be postponed until his letter could be considered. On June 9, 1952, the California State Headquarters of the Selective Service System wired the local board requesting that Kalpakoff's file be forwarded to the State Headquarters for review and directed postponement of the induction. Accordingly, on June 9, 1952, Kalpakoff was sent a notice of postponement of his induction executed on a printed Selective Service form advising him that his order to report for induction was postponed until further notice. This notice of postponement was signed by a member of the local board. The State Headquarters then returned the file to the local board without action and Kalpakoff was advised of this action by letter from the local board dated July 15, 1952. The next day, July 16, the board sent to him a letter referring to the previous postponement stating that that postponement no longer existed and that he was thereby ordered to report for induction at the place previously designated at 1:30 P.M. on the 28th day of July, 1952. The copy in the file bears only the typewritten signature of the clerk. The letter contained directions as to where he could procure transportation by bus from his place of residence to Los Angeles. He did not so report but by letter received by the local board August 1, 1952,

graphs here involved for the very purpose and with the specific intent of enabling his estate to obtain the benefit of the created marital deduction privilege. The memorandum opinion also further declared that, "When Chambers Kellar died, that portion of his estate which

was to go to his wife, the title to that property, vested simultaneously with his death." But the court did not assume to pass upon whether these elements and the language of the will did or did not give rise to an absolue interest in the widow under South Dakota law.

notified that board: "I cannot appear for induction into the Army. My religious faith will not allow me to train to kill humans."

For the reasons stated in our opinion in the case of Mason v. United States, supra, we hold that the order to report for induction was a valid one.

■ Kalpakoff also sought to defend against his conviction for failure to report by attacking the proceedings before the Selective Service boards and before the hearing officer of the Department of Justice. Before those boards he had asserted that as a member of the "Russian Spiritual Christian Jumpers, Molokan", he was a conscientious objector entitled to exemption from all military training or service. He argues that the hearing officer of the Department of Justice applied improper standards in arriving at the conclusion and recommendation as to his classification. He asserts that his I-A classification was without basis in fact and that he should have been permitted during the trial below to introduce in evidence the FBI reports furnished to the hearing officer.

We hold, as we did in the Mason case, supra, that Kalpakoff is prohibited from thus challenging the order to report for induction because of his failure to exhaust his administrative remedies. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305; Williams v. United States, 9 Cir., 203 F.2d 85; United States v. Balogh, 2 Cir., 160 F.2d 999. Kalpakoff was given a preinduction physical examination on June 8, 1951, and a certificate of acceptability issued on that date. His failure to report for induction occurred more than one year

thereafter. At the time of such failure there was in effect an army regulation which was in substance the same as that to which we called attention in the Mason case. Under that regulation, had Kalpakoff reported he would have been given a complete examination to determine his acceptability as more than one year had expired since his preinduction examination.[1] Since he had not exhausted his administrative remedies Kalpakoff was without standing to assert in the trial court the invalidity of his classification.

The judgment is affirmed.

1. Special Regulation No. 615–180–1, § 16, dated November 5, 1951, and in effect at the time Kalpakoff was ordered to report, provided: "Selective service registrants found acceptable for military service normally will be ordered to report to induction stations in not less than 21 and not more than 120 days after the preinduction examination. If the lapse of time between the preinduction examination and the appearance of the registrant for in-

duction is more than 120 days, another complete examination is required to determine acceptability and immediate induction thereafter, except [in the case of postponed registrants in whose cases a complete physical examination is to be given where one year has elapsed after the preinduction examination.]" See the regulation applied in United States v. Wider, D.C., 119 F.Supp. 676, 680.