William CHERNEKOFF, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 14370.

United States Court of Appeals,
Ninth Circuit.

Feb. 24, 1955.

Rehearing Denied March 25, 1955.

J. B. Tietz, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, Bruce I. Hochman, Hiram W. Kwan, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS and CHAMBERS, Circuit Judges, and McLAUGHLIN, District Judge.

McLAUGHLIN, District Judge.

The appellant was indicted and convicted of a violation of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix § 462. He had registered with a local draft board in Alhambra, California, on June 29, 1950. This board did not post the names and addresses of advisors to registrants as required by 32 Code Fed.Regs. § 1604.41.[1] Appellant also filed with the board an SSS Form 150, "Special Form For Conscientious Objectors," stating that his religious training and beliefs as a member of the Molokan Spiritual Jumpers precluded his entering the Armed Forces in any capacity. He requested to be classified IV-E. This classification is now obsolete, being currently termed I-O.[2] The board classified him I-A-O.[3] Appellant requested a personal appearance before his local board pursuant to 32 Code Fed.Regs. § 1624.1(a), 2(a).[4] At the same time he appealed this classification as allowed by 32 Code Fed.Regs. § 1626.2(a),[5] which fulfills the requirements of 50 U.S.C.A.Appendix, § 456(j).[6] The local board interviewed

---

1. "Appointment and duties. Advisors to registrants shall be appointed by the Director of Selective Service upon recommendation of the State Director of Selective Service to advise and assist registrants in the preparation of questionnaires and other selective service forms and to advise registrants on other matters relating to their liabilities under the selective service law. Every person so appointed should be at least 30 years of age. The names and addresses of advisors to registrants within the local board area shall be conspicuously posted in the local board office."

2. 32 Code Fed.Regs. 1622.14: "Class I-O: Conscientious objector available for civilian work contributing to the maintenance of the national health, safety, or interest. (a) In Class I-O shall be placed every registrant who would have been classified in Class I-A but for the fact that he had been found, by reason of religious training and belief, to be conscientiously opposed to both combatant and non-combatant training and service in the armed forces."

3. 32 Code Fed.Regs. § 1622.11: "Class I-A-O: Conscientious objector available for noncombatant military service only. (a) In Class I-A-O shall be placed every registrant who would have been classified in Class I-A but for the fact that he has been found, by reason of religious training and belief, to be conscientiously opposed to combatant training and service in the armed forces."

4. § 1624.1: "Opportunity to appear in person. (a) Every registrant, after his classification is determined by the local board (except a classification which is itself determined upon an appearance before the local board under the provisions of this part), shall have an opportunity to appear in person before the member or members of the local board designated for the purpose * * *."

§ 1624.2: "Appearance before local board. (a) At the time and place fixed by the local board, the registrant may appear in person before the member or members of the local board designated for the purpose. * * *"

5. "Appeal by registrant and others. (a) The registrant, any person who claims to be a dependent of the registrant, any person who prior to the classification appealed from filed a written request for the current occupational deferment of the registrant, or the government appeal agent may appeal to an appeal board from any classification of a registrant by the local board except that no such person may appeal from the determination of the registrant's physical or mental condition."

6. " * * * Any person claiming exemption from combatant training and service because of such conscientious objections shall, if such claim is not sus-

appellant on Dec. 19, 1951. It adhered to its original ruling.

Following the procedure set out by 32 Code Fed.Regs. § 1626.25(a) (2) [7] to satisfy 50 U.S.C.A.Appendix, § 456(j),[8] the appeal board transferred appellant's file to the Department of Justice for an advisory recommendation. A designated officer of the Department held a hearing on Dec. 2, 1952, pursuant to 32 Code Fed.Regs. § 1626.25(b).[9] The notice informing appellant of his right to be present and to introduce evidence in his own behalf did not, however, inform him that, upon a timely request, he would be furnished with a summary of any information in the file pertaining to him which might tend to defeat his request for a specific classification.

The appeal board reclassified appellant on May 30, 1953, as I–A. On July 27, 1953, he was ordered to report for induction. At the induction station a statement was taken from the appellant that he refused to submit to induction, and he then left the station. The circumstances surrounding appellant's written statement will be adverted to in the course of this opinion.

We first consider appellant's contention that because of the appeal board's failure to accord him due process of law its classification of him as I–A is invalid. His draft board file contained information of an apparent derogatory nature concerning his religious sincerity. The appellant never knew of this data being considered and never had a chance to explain the same. United States v. Nugent, 1953, 346 U.S. 1, 6, 73 S.Ct. 991, 994, 97 L.Ed. 1417, stated: "* * * the Department of Justice satisfies its duties under § 6(j) when it * * * supplies him with a fair résumé of any adverse evidence in the investigator's report." This was not done here. As stated, appellant was not informed of his right to such a summary. This was the fault of the Department of Justice, for in notifying the appellant of the hearing on Dec. 2, 1952, an obsolete form of notice was used.

The present case is thus to be distinguished from United States v. Nugent, supra, note 10, where the defendants were mailed instructions informing them of their right to know of unfavorable evidence. This appellant did not waive his right to a summary as he was not informed of this right by anyone. United States v. Stasevic, D.C.S.D.N.Y. 1953, 117 F.Supp. 371, 374.

The fair hearing essential to meet minimum requirements of any accepted notion of due process includes the opportunity to know of adverse evidence and to be heard concerning its truth, relevancy and significance. Otherwise such a hearing is in violation of the "concept of ordered liberty", Palko v. State of Conn., 1937, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288; also United States v. Bouziden, D.C.W.D.Okl., 1952, 108 F. Supp. 395; Jeffries v. Olesen, D.C.S.D. Cal., 1954, 121 F.Supp. 463, 475. Here,

---

tained by the local board, be entitled to an appeal to the appropriate appeal board. * * *"

7. "* * * If * * * the local board has classified the registrant in any class other than Class I–O, the appeal board shall transmit the entire file to the United States Attorney for the Federal judicial district in which the appeal board has jurisdiction for the purpose of securing an advisory recommendation from the Department of Justice."

8. "* * * Upon the filing of such appeal, the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing. The Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned, and such person shall be notified of the time and place of such hearing. * * *"

9. "Whenever a registrant's file is forwarded to the United States Attorney in accordance with paragraph (a) of this section, the Department of Justice shall thereupon make an inquiry and hold a hearing on the character and good faith of the conscientious objections of the registrant. * * *"

when the appellant introduced evidence at the hearing he was like a blind man striking at an invisible foe.

■ The failure of the local board to comply with the posting of names and advisors as provided by 32 Code Fed. Regs. § 1604.41, supra, presents another problem of due process.

It was said in argument that this omission is in consonance with the practice in Los Angeles County. If that be so, we have serious doubt as to the validity of such a practice by the local boards. Suffice it here to observe that this deviation from the regulation was not affected by the action of the appeal board. Franks v. United States, 9 Cir., 1954, 216 F.2d 266.

■ Likewise in the course of argument it was represented and unchallenged that the derogatory information in the file as to appellant's religious sincerity concerns a single conviction for drunkenness and a later one for speeding. To be a good church member does not necessarily entail being a saint. A mortal may occasionally weaken and still remain loyal to the tenets of his

faith. A conscientious objector is not to be considered an outcast susceptible of being convicted of a felony by any stray scintilla of evidence, indicating sporadic deviation from the principles and approved practices of his religion. We are all children of Eve.

■ Reversal is also required because the appellant never refused to be inducted into the Armed Forces in the manner required by the law in order to warrant prosecution.

Appellant reported to the induction station as required by 32 Code Fed.Regs. § 1632.14(a).[10] He thus exhausted his administrative remedies as distinguished from the appellants in Mason v. United States, 9 Cir., 218 F.2d 375; Kalpakoff v. United States, 9 Cir., 217 F.2d 748; Billings v. Truesdell, 1944, 321 U.S. 542, 558, 64 S.Ct. 737, 88 L.Ed. 917; Williams v. United States, 9 Cir., 1953, 203 F.2d 85, certiorari denied 345 U.S. 1003, 73 S.Ct. 1149, 97 L.Ed. 1408. As 32 Code Fed.Regs. § 1632.16 [11] does not prescribe any method for induction, the Department of the Army has specified the procedure to be followed in Special Regulation 615–180–1.[12]

10. "Duty of registrant to report for and submit to induction. (a) When the local board mails to a registrant an Order to Report for Induction (SSS Form No. 252), it shall be the duty of the registrant to report for induction at the time and place fixed in such order. * * *"

11. "Induction. At the induction station, the selected men who have been forwarded for induction and found acceptable will be inducted into the armed forces."

12. "23. Induction.—The following procedure will be followed in the induction of all registrants into the Armed Forces: "a. Registrants who have been determined to be fully qualified for induction in all respects will be assembled. The inducting officer will inform them of the imminence of induction, quoting the following: "You are about to be inducted into the Armed Services of the United States, in the Army, the Navy, or the Air Force, as indicated by the service announced following your name when called. You will take one step forward as your name and service are called and such step will

constitute your induction into the Armed Service indicated. "b. A commissioned officer or warrant officer then will call the roll and the foregoing procedure will be carried out. * * *"

* * * * *

"27. Processing registrants in special categories.

* * * * *

"b. Registrants who refuse to submit to induction.—Any registrant removed from the group as prescribed in paragraph 23, and who persists in his refusal to submit to induction, will be informed that such refusal constitutes a felony under the provision of the Selective Service Regulations. He will be informed further that conviction of such an offense under civil proceedings will subject him to be punished by imprisonment for not more than 5 years, or a fine of not more than $10,000, or both. He will then be informed again of the imminence of induction using the language specified in paragraph 23a, and his name and service again will be called. If he steps forward at this time, he will be in-

One purpose of this regulation is self-evident. It is intended to give a registrant a last clear chance to change his mind and accept induction rather than certain indictment and possible conviction for a felony carrying a maximum punishment of five years or a fine of not more than $10,000, or both. The regulation is couched in mandatory, not discretionary, language.

In the present case the appellant was not given the prescribed opportunity to step forward, nor the prescribed warning. The Army deemed it useless to apply the Special Regulation to the appellant as he had said he would not if asked to so do step forward and become inducted into the Armed Forces. It does not matter that he might not have changed his mind. He should have been given the opportunity granted him by the Army's own regulation to seriously reflect and to let actions speak louder than words. In Corrigan v. Secretary of Army, 9 Cir., 1954, 211 F.2d 293, the court stated it is highly important that the moment a selectee becomes subject to military authority be marked with certainty. It is also important that the moment he becomes liable for civil prosecution be marked with certainty. The Special Regulation fulfills such a need. The situation found in Williams v. United States, supra, where the defendant, although instructed to do so, did not go to the induction center at all, is not found in this case. Bradley v. United States, 9 Cir., 218 F.2d 657, too, is distinguishable. There the inductee at the center had been taken aside and warned of the consequences of his refusal to serve in the Armed Forces, whereupon he reiterated his refusal to submit to induction. The situation found in Corrigan v. Secretary of Army, supra, also is not present here, as in that case the lack of space precluded compliance with the "step forward" ceremony. Here nothing prevented the induction ceremony from being properly conducted, including any action by the appellant. The writing is in evidence: "I refuse to be inducted into the Armed Services of the United States. William Chernekoff, Junior." [13] Its genuineness is not disputed. However, there is nothing in the evidence to indicate when or under what circumstances it was written and or was delivered. It amounts to no more than testimony that someone heard appellant say he would refuse to be inducted except that a statement in writing is more easily proved.

The appellant could well have changed his mind and complied with the "step forward" procedure had the Special Regulation been followed or "stood in his tracks" if he desired to adhere to his former statement. The ceremony is designed to bring about a definite responsive course of conduct by the selectee marking his separation from his civil status. This ceremony must be conformed to unless the selectee himself makes it impossible, as in the case of Williams v. United States, supra, or unnecessary as in Bradley v. United States, supra. We hold that the separation did not take place and that appellant was not given a definite opportunity to be inducted or refuse to be inducted at the time provided for induction and that he did nothing to make such opportunity impossible or unnecessary.

Reversed.

---

formed that he is a member of the armed service concerned, using the language specified in paragraph 23b. If, however, he persists in refusing to be inducted, the following action will be taken:

"(1) The registrant will be requested, but not required, to make a signed statement, dated, in his own handwriting, as follows: 'I refuse to be inducted into the Armed Services of the United States.' Such statement should be witnessed by at least two witnesses who shall affix their signatures to the statement. Registrants who refuse induction will not be furnished any means of transportation."

13. Government's Exhibit 1, page 59 of record.