**Karl F. RITZ, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD**

**and**

**William F. McKee, Administrator of the Federal Aviation Agency, Respondents.**

**No. 20125.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 25, 1966.

Decided Feb. 3, 1967.

James D. Hill, Washington, D. C., for petitioner.

O. D. Ozment, Deputy Gen. Counsel, C. A. B., with whom Asst. Atty. Gen. Donald F. Turner, Joseph B. Goldman, Gen. Counsel, Warren L. Sharfman, Associate Gen. Counsel, Litigation and Legislation, Robert L. Toomey, Atty., C. A. B., and Howard E. Shapiro, Atty., Dept. of Justice, were on the brief, for respondents.

Before DANAHER, McGOWAN and LEVENTHAL, Circuit Judges.

McGOWAN, Circuit Judge:

Petitioner seeks review of an order of the Civil Aeronautics Board declining to review an Examiner's initial decision suspending his Airline Transport Pilot rating for 90 days. This order, which recites that the Board's determination has been made only upon "consideration

of the petition and answer," [1] is the culmination of a procedure which originates with the entry of a disciplinary order by the Federal Aviation Administrator. If the person affected by that order is dissatisfied with it, he may appeal to the Board.[2] Such an appeal initiates a wholly new proceeding in which the Administrator files a formal complaint in respect of the conduct in question, a hearing is held, and an independent decision is rendered. The initial decision reached by the Examiner presiding at that hearing is not subject to review by the Board as a matter of right.[3] From our own examination of the whole record in this case, including the transcript of the hearings before the Examiner, we are unable to say with assurance that the Board's own procedural standards were observed. Because of our doubts in this regard, we set aside the Board's order declining review and remand the case for further proceedings not inconsistent herewith.

## I

The Board's Rules of Practice in Air Safety Proceedings provide expressly that the Administrator, as the complainant in the *de novo* hearing before the Board, shall have the burden of proof.[4] In this instance the complaint charged in substance that petitioner, in landing his aircraft at a field where there was a landing aid known as a "visual approach slope indicator," had improperly descended below the glide slope demarcated by that device, striking a wall or dike on the edge of the field. In an answer to that complaint, petitioner included certain matters which he characterized as "affirmative defenses." One of these was a claim that the VASI system was out of adjustment by reason of improper installation or maintenance, thereby causing the indicated glide slope to be unsafely defined with respect to surface obstacles.

When the hearing started, and after many facts were stipulated, the Administrator began offering testimony designed to show that the VASI system was operating properly. The Examiner interrupted this, indicating that he conceived this presentation to be out of order as constituting rebuttal evidence. Counsel for both the Administrator and the petitioner signified their belief that the testimony was timely in terms of the Administrator's burden, but the Examiner pressed his dissatisfaction, alluding to a presumption "that all the equipment at the airport was operating properly and, if it was not, why this would be a matter of affirmative defense for the [petitioner] to establish. * * *" Counsel for the Administrator finally indicated his willingness to conform to the Examiner's desires, but petitioner did not. With the Administrator's direct case complete at this point in view of the Examiner's intervention, petitioner's counsel moved to dismiss the complaint on the ground that the Administrator had failed to make out an adequate case.

The Examiner denied this motion; and evidence was then offered on behalf of

---

1. Captioned "Order Declining Review," the Board's order reads:

    The respondent has filed a petition for discretionary review of the initial decision * * * in the above titled case. An answer opposing the petition has been filed by the Administrator. Upon consideration of the petition and answer, the Board has determined not to review the initial decision.

    ACCORDINGLY, IT IS ORDERED THAT:

    1. The petition for discretionary review filed by the respondent be and it hereby is denied;

    2. The examiner's initial decision shall become effective as the final decision of the Board. * * *

2. See 49 U.S.C. § 1429 (1964). Petitioner does not question the Board's power to suspend his license for disciplinary purposes upon proper findings after a full hearing. See Pangburn v. CAB, 311 F.2d 349 (1st Cir. 1962).

3. See 14 C.F.R. § 301.45 (1966).

4. See 14 C.F.R. § 301.22 (1966): "In proceeding under section 609 of the Act the burden of proof shall be on the Administrator."

petitioner.[5] At the close of that evidence, the Administrator moved to strike the affirmative defenses, including the one alleging improper adjustment or maintenance of the VASI system. The Examiner declined to do so, stating, in respect of this particular matter, that petitioner's evidence had made out "a *prima facie*" case which the Administrator would presumably have to rebut. Thereafter the Administrator presented evidence designed to show that the VASI system had been properly installed and maintained, and was in satisfactory adjustment at the time in question.

In his initial decision, the Examiner characterized the Administrator's case-in-chief as a *"prima facie"* case resting upon a factual showing that petitioner had hit the dike, the weather was clear, the aeroplane was functioning properly, and petitioner knew the dike was there. He referred to the "defense" of the assertedly defective installation, adjustment, or maintenance of the VASI system. In summarizing the evidence on this point, he appears to say that petitioner's testimony and that of his copilot did not indicate that they were observing the VASI system while making

this landing, and, thus, the VASI system, whether it was functioning properly or not, could not have been the cause of the accident—[6] a conclusion which would appear to be at variance with his earlier ruling that this same testimony had made out a *"prima facie"* case for petitioner's "affirmative defense" in this regard. In any event, the Examiner's formal finding was that the accident "was not caused by the visual approach slope indicator system * * * or by any defect or lack of adjustment of the units composing that system."

## II

Our disinclination to let the Board's order stand in this case derives from our inability to know just how the Examiner reasoned in making his finding of a violation. It may have been that the Examiner believed that petitioner was paying no attention to the glide slope indicator;[7] and, as remarked above, in this view of the evidence, it would make no difference whether the indicator was in proper adjustment or not. But the Examiner's comments of this nature in his decision are obscured by what he said earlier in refusing to strike the charge

5. This evidence consisted of testimony by petitioner and his co-pilot as to their efforts to follow the glide path as marked out by the VASI system; and the testimony of two other witnesses to the effect that (1) an examination of the system the next day showed that one of the lights was improperly adjusted, and (2) the system had not been installed precisely in accordance with the specifications issued by its manufacturer.

6. After setting out in detail the mechanics of the VASI system, and summarizing the testimony of petitioner and his co-pilot, the Examiner concluded:
   [S]ince respondent's testimony does not include a statement that he observed the VASI lights after descending through the 500-foot level, his testimony, standing alone, does not support his contention that he followed the VASI glide slope throughout the final approach and until striking the dike. Co-pilot Zompetti's testimony is vague and equivocal, and is not sufficient to conclude that he observed the VASI lights continuously, so his testimony also does not sup-

port a finding that respondent followed the VASI glide slope until the aircraft struck the dike.

7. The Examiner's conclusion in this regard is explicable only as a credibility determination adverse to petitioner. Petitioner's testimony was to the effect that, on a long runway like the one here involved at LaGuardia, neither he nor pilots generally followed the glide path in. What they did do was simply to stay above it, which they are apparently permitted to do under the regulations. Petitioner testified that, contrary to his usual practice, he was following the glide path on the day in question because of a warning he had received about the temporarily shortened length of the runway due to the presence of construction machinery at the far end. He testified flatly that he was using the VASI system in order to be sure of his elevation with respect to the dike, and that he kept on the glide path throughout his entire approach. His co-pilot also testified that the VASI system was being used on this particular approach.

of maladjustment, and by the ambivalent nature of his finding. This base of decision is further out of keeping with the lengthy discussion of the evidence as to proper installation, adjustment, and maintenance.

8. At no time did the Examiner enunciate precisely his position on the question of proof. The inconclusive nature of the record on this critical point is best illustrated by the discussion which ensued when the Examiner, interrupting the presentation of the Administrator's case, suggested that it was petitioner's responsibility to introduce evidence concerning the alleged deficiencies in the system:

Examiner: Gentlemen, I want to interrupt here and ask counsel if there is any reason why we are proceeding out of order in the case.

Mr. White [Counsel for the Administrator]: Proceeding what?

Examiner: Out of order. I am wondering why the Administrator is putting in what appears to be rebuttal material at this time. Maybe there is a reason. If there is, I would like to know.

Mr. White: Well, I think your Honor, that the reason for it, frankly, is that this is the way we had planned it because I believe that most of the charges are either admitted or established by the stipulation.

Examiner: All right. Does that require you to go ahead with the rebuttal material at this time?

Mr. O'Brien [Counsel for Petitioner]: May I say something?

Examiner: Yes.

Mr. O'Brien: They have alleged in the complaint that the respondent was using the VASI at the time, date and place involved, and it just seems to me that in going along with that allegation they have to prove properly, like they are doing, that the units were installed according to Hoyle and at the time date and place mentioned they were set up.

Examiner: I don't understand why. I think we can presume that all the equipment at the airport was in operating condition, in good operating condition and, if it was not, why, this would be a matter of an affirmative defense for the respondent to establish, and that's the way your pleading is drawn up, isn't it, Mr. O'Brien?

Mr. O'Brien: Well it was drawn up predicated upon the fact that they would offer some proof on how they were installed.

A second difficulty we have is in knowing whether the Examiner, in weighing this last-mentioned evidence, acted with due recognition of the Board's rule that the burden of proof was on the Administrator.[8] In the context of a claim that the

Examiner: I mean you have included as an affirmative defense here that the VASI equipment was not properly installed and properly maintained, and it would appear to me that the testimony could be very much more pointed and that the issue would be much more clearly drawn if you had proceeded to show in what respects it was not properly maintained or installed so that this testimony could be pointed towards certain specific questions of fact that your case would develop.

We are going into a great deal of general information here which, it would seem to me, would not be relevant unless it is shown later on in the hearing that, for example, the footings were not properly installed or there was something wrong with the way the lights were adjusted.

I think we need this information first. I mean if counsel has a good reason for doing it this way, fine.

Mr. White: Well, I will be very happy to explain our reasons. I was aware that Mr. O'Brien construed our charge as meaning that the VASI was in properly operating condition at the time of the accident out of which these charges arise and that we, therefore, were going to offer evidence in support of this. I assumed that your Honor would require us to do this, that, shall I say, Mr. O'Brien would persuade your Honor that we should do this, and therefore we undertook to do it.

Now I must agree that there is an indication here that what we are offering is rebuttal evidence, but if your Honor would prefer, why, we will be happy to let Mr. O'Brien proceed with it.

Examiner: I believe, Mr. White, it would develop a much more intelligent record if you did that, and I will ask Mr. O'Brien to proceed with his case.

*   *   *

Mr. O'Brien: I would like to make a statement for the record. I know of no legal presumption, and again I would like to point out that in the complaint they have alleged the VASI system, that the respondent was alleged to have flown below the VASI unit as it was established at that time, date and place.

VASI system was being used in the landing, this means that the Administrator must show by a preponderance of the evidence that the system was operating properly. As we have seen, the Administrator undertook to do just that, but was interrupted on the basis of allusions to "presumptions" and "affirmative defenses." None of these are reassuring on the propriety of our assuming that, when the moment of truth arrived for weighing all the evidence after it was in, the burden of proof itself was correctly assigned.

We would not intercede here simply because the Examiner may be thought to have varied the order of presentation of the evidence. Trial examiners generally, in these days of elongated administrative proceedings, should not be discouraged from taking initiatives in the interest of shorter and more intelligible records. Where, as here, petitioner had on hand two witnesses to testify as to particular alleged defects in installation and maintenance, the Examiner might well have believed that time would be saved if these witnesses were heard first. Certainly

any trier may suggest to the parties that a variation in the normal order of proof is desirable.[9] But, even taking this view of what the Examiner did, we are still left with the ambiguous implications of what he said insofar as the basic issue of the burden of proof is concerned.

It has been urged upon us by the Board that, in any event, an examination by us of the evidence of record will show that the Administrator clearly carried the burden imposed upon him by the Board's Rules. That may be true, but what is not so clear to us is why a reviewing court should perform this function in the first instance, the agency reviewed having declined to do so. And this is not merely a matter of bureaucratic maneuvering over the division of labor. It is of the essence of rational administrative adjudication that critical determinations of this kind be made initially at the administrative level, where the special factors of agency experience and expertise— which are the warrant for administrative adjudication in the first place—can be brought to bear.[10]

---

I don't know of any legal presumption that would presume that equipment was properly installed, maintained and set up on the date and time and place in question. I know of no such legal presumption and I would think the complainant here would have to show something, show how the equipment was set up, what it was, what it does, how it was inspected and how it checked out, and they would have to prove that the equipment as such was set properly at the time, date and place of the incident.

Examiner: Well, Mr. O'Brien, in my opinion these are matters that are in the nature of affirmative defenses and the burden of going forward is upon you, and so I will request that you do so and proceed with it.

9. Petitioner requested that the case be dismissed on the ground that the Administrator failed to sustain his burden of proof but he agreed to present his evidence when that request was denied. The present posture of this case cannot be affected by a consideration of alternative courses of action which might have been pursued by petitioner's counsel in lieu of proceeding as requested by the Examiner.

10. Since the Board, in refusing discretionary review, gave no indication that it had reviewed the record made before the Examiner, we could never be certain, no matter how thoroughly we reviewed the record, that petitioner was accorded a proper hearing by the only body authorized to suspend his license:

[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). See Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 167–168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); Bell v. United States, 366 U.S. 393, 412–413, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); SEC

The Board's order declining review is set aside, and the case is remanded to the Board for further proceedings not inconsistent herewith.

v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). This is not a case where the mistake of the administrative body clearly had no bearing on the procedure used to reach its decision. Compare Massachusetts Trustees, etc. v. United States, 377 U.S. 235, 246–248, 84 S.Ct. 1236, 12 L.Ed.2d 268 (1964).