Holbrook Thayer ASHTON, II, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 19213.

United States Court of Appeals
Eighth Circuit.

Dec. 3, 1968.

Rehearing Denied Dec. 24, 1968.
Certiorari Denied April 7, 1969.
See 89 S.Ct. 1308.

J. B. Tietz, Los Angeles, Cal., and Owen T. Armstrong, St. Louis, Mo., for appellant.

Roger Edgar, Asst. U. S. Atty., St. Louis, Mo., for appellee, Veryl L. Riddle, U. S. Atty., St. Louis, Mo., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and BLACKMUN and LAY, Circuit Judges.

LAY, Circuit Judge.

Defendant Ashton appeals a judgment of conviction for failure to report for and submit to induction into the Armed Forces of the United States in violation of Tit. 50 U.S.C.App. § 462. We affirm.

 Defendant urges that there exists "no basis in fact" for his classification and therefore his failure to exhaust administrative remedies under the Selective Service Act is immaterial. We disagree. Although failure to appeal one's classification does not preclude a collateral attack in all cases,[1] the exhaus-

---

1. See Glover v. United States, 286 F.2d 84 (8 Cir. 1961); Van Bibber v. United States, 151 F.2d 444 (8 Cir. 1945). In *Glover* we said:

"We adhere to the general rule as to the necessity for exhaustion of administrative remedies in order to obtain a judicial review, and are of the opin-

tion rule cannot be lightly discarded by a simple plea of procedural ignorance, as attempted here.[2] When administrative remedies are not exhausted, exceptional circumstances must exist for judicial review of the claimed erroneous classification. None are shown here, and we need not reach the issue raised.[3] Edwards v. United States, 395 F.2d 453 (9 Cir. 1968).

Defendant asserts that he "was not given all the opportunities provided by the regulations to go through the mandatory induction prerequisites at the induction station." Defendant argues that he was not provided a "second choice" to refuse induction. See Chernekoff v. United States, 219 F.2d 721 (9 Cir. 1955). Ashton claims relevancy to the principles of *Chernekoff* in that the induction officer failed to warn him *explicitly* of the *exact* penalty for refusing to submit to induction.

In Chernekoff v. United States, supra, at 725, referring to the Army regulations,[4] the court said:

"One purpose of this regulation is self-evident. It is intended to give a registrant a last clear chance to change his mind and accept induction rather than certain indictment and possible conviction for a felony carrying a

maximum punishment of five years or a fine of not more than $10,000, or both. The regulation is couched in mandatory, not discretionary, language."

■ Assuming *arguendo* defendant's claim that failure to inform him of the exact severity and extent of punishment violates the regulation, we feel a fair reading of the record does not support defendant's contention. Lt. Coccari testified that at the induction ceremony when Ashton refused to step forward he *read* the regulation to Ashton and particularly form AR 601270 which sets forth the terms of the punishment itself. This evidence was not in any way rebutted by Ashton. Under these circumstances we find no evidentiary merit to this argument.

We pass now to the constitutional issues raised by defendant.

■ Ashton first attacks the overall constitutionality of the draft laws and the alleged illegal use of draftees because there exists no emergency or declaration of war. Such attack merits little discussion. This argument has been consistently rejected. Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918); United States v.

---

ion that such rule is generally applicable and usually necessary. However, we are of the view that such general rule is not absolute, inflexible and without exception, but that it is to be relaxed only under extremely exceptional and unusual circumstances. The factual situation presented in this case is appropriate for and requires the relaxation of such rule." 286 F.2d at 90–91.

2. Defendant's earlier administrative appeals to the local board demonstrate his knowledge of administrative procedure. He appealed from his 1–A classification in February of 1967. After being turned down by the appeals board he, for the first time, requested form SSS 150 for conscientious objector. After returning the same his case was reviewed and he was once' again classified 1–A. This was on April 19, 1967. He did not appeal this classification.

3. Although we do not pass upon defendant's classification, his asserted ground as

a conscientious objector relates a doubtful prima facie case under United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Defendant told the board on April 20, 1966, "Philosophy is my major, it is sort of an accumulative field. I have no objection to being drafted, although it would handicap me." At that time he was given a 2–S classification until February 1, 1967. When Ashton signed his conscientious objector form on April 13, 1967, he said he could not answer the question as to his belief in a "Supreme Being" for lack of definitive terms. He stated the source of his conscientious objection was "philosophy." Excluded under Tit. 50 U.S.C.App. § 456 (j) are beliefs based essentially on "political, sociological or philosophical views or a merely personal moral code." Cf. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

4. Special Regulation 615–180–1(27) (b) is quoted in 219 F.2d at 724.

Hogans, 369 F.2d 359 (2 Cir. 1966); United States v. Bolton, 192 F.2d 805 (2 Cir. 1951) (per curiam); United States v. Henderson, 180 F.2d 711 (7 Cir. 1950); United States v. Herling, 120 F.2d 236 (2 Cir. 1951).[5]

The United States Supreme Court in United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), recently observed in the draft card burning case:

> "The constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping. Lichter v. United States, 334 U.S. 742, 755–758, [68 S.Ct. 1294, 1301–1303, 92 L.Ed. 1694] (1948); Selective Draft Law Cases, 245 U.S. 366, [38 S.Ct. 159, 62 L.Ed. 349] (1918); see also Ex Parte Quirin, 317 U.S. 1, 25–26, [63 S.Ct. 1, 9–10, 87 L.Ed. 3] (1942). The power of Congress to classify and conscript manpower for military service is 'beyond question.'"

 Defendant likewise raises the question of the legality of use of draftees in Vietnam and of the Vietnam War itself. Defendant lacks standing to raise such issues. He has received no order to go to Vietnam. See United States v. Bolton, supra. And compare Johnson v. Eisenstrager, 339 U.S. 763, 789, 70 S.Ct. 936, 94 L.Ed. 1255 (1950).

In United States v. Mitchell, 369 F.2d 323, 324 (2 Cir. 1966), a similar argument was aptly answered:

> "Nevertheless, appellant's allegations are not a defense to a prosecution for failure to report for induction into the Armed Forces and his evidence was properly excluded. Regardless of the proof that appellant might present to demonstrate the correlation between the Selective Service and our nation's efforts in Vietnam, as a matter of law the congressional power 'to raise and support armies'

and 'to provide and maintain a navy' is a matter quite distinct from the use to which the Executive makes of those who have been found qualified and who have been inducted into the Armed Forces. Whatever action the President may order, or the Congress sanction, cannot impair this constitutional power of the Congress."

See also Luftig v. McNamara, 126 U.S. App.D.C. 4, 373 F.2d 664, 665–666 (1967), cert. den.; Mora v. McNamara, 389 U.S. 934, 88 S.Ct. 282, 19 L.Ed.2d 287 (1967). The reasoning is apposite here.

Judgment affirmed.

---

5. See also the excellent opinion by Senior District Judge John Delehant, United States v. Richmond, 274 F.Supp. 43 (C.D. Cal.1967), for a history of such actions, and for a thorough treatment of Kneedler v. Lane, 45 Pa. 238, upon which defendant relies.