Gary F. MOTTOLA, a citizen of the United States, and a member of the United States Air Force Reserves, et al., Plaintiffs-Appellees,

v.

Richard M. NIXON, President of the United States, and Melvin Laird, Secretary of Defense, Defendants-Appellants.

No. 26662. .

United States Court of Appeals, Ninth Circuit.

July 13, 1972.

Brian B. Denton, Asst. U. S. Atty. (argued), James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for defendants-appellants.

Robert M. O'Neill (argued), Berkeley, Cal., Gary F. Mottola, in pro. per., Irving M. Gross, in pro. per., James R.

Schwartz, in pro. per., for plaintiffs-appellees.

Peter J. Donnici (argued), San Francisco, Cal., Lawrence R. Velvel, Lawrence, Kan., Anthony D'Amato, Chicago, Ill., amicus curiae for Constitutional Lawyers Comm. on Undeclared War.

Before ELY, TRASK and CHOY, Circuit Judges.

TRASK, Circuit Judge:

The government brings this appeal under 28 U.S.C. § 1292(b) from an interlocutory order of the district court, 318 F.Supp. 538, denying the government's motion seeking dismissal of plaintiffs' action on the grounds that the plaintiffs lack standing, that their action is barred by the doctrine of sovereign immunity and that the action presents a non-justiciable political question. We have concluded that the plaintiff-appellees lack standing to litigate their action and reverse the order of the district court for that reason.

The appellees are members of the United States Air Force and Army Reserves.[1] Following President Nixon's April 30, 1970, announcement that United States combat forces were being introduced into the conflict in Cambodia, the appellees brought suit for a judgment declaring such military activities to be in violation of the United States Constitution, the United Nations Charter, and other treaties, and seeking to enjoin the President and the Secretary of Defense from ordering military personnel to conduct military operations in Cambodia in the absence of a congressional declaration of war.[2]

The action was filed on behalf of the named plaintiffs and, pursuant to Rule 23, Fed.R.Civ.P., on behalf of all citizens and taxpayers of the United States, and, pursuant to Rule 23(c) (4) (B), on behalf of all military reservists similarly situated and "all eligible potential draftees under the Selective Service Act." The trial court disallowed the class action claim and the prayer for injunctive relief, but proceeded to decide the declaratory judgment action on behalf of Mottola, Schwartz and Gross.[3]

Specifically, appellees allege that the Executive has acted unconstitutionally in committing American combat forces to Cambodia since Congress has not declared war against Cambodia under Article I, Section 8(11) of the United States Constitution.

The government contends that only those under military orders to report to a theatre of hostilities have the requisite standing to challenge the legality of military operations in such a theatre. We agree. The legality of an order sending men to participate in an "undeclared war" should be raised by someone to whom such an order has been directed.[4] Berk v. Laird, 429 F.2d

---

1. Some of the original plaintiffs are no longer parties to this suit. The district court granted the government's motion to dismiss as to Roy Olson, an eligible potential draftee under the Selective Service Act; this court dismissed the case as to Gary Mottola when he was honorably discharged from the United States Air Force Reserve.

2. The complaint also prayed for a declaration that the commitment of substantial numbers of American troops to any country in Indochina must be preceded by a congressional declaration of war. Its prayer for withdrawal with all deliberate speed was limited to United States military forces in Cambodia. In addition, the complaint specifically excepted military operations in Vietnam from its pray-

er for injunctive relief. Notwithstanding the exclusion of the Vietnam operations from the allegations of the complaint, the trial court addressed itself to the larger and different issue of the Vietnam operation.

3. The court stated "Because denial of the government's motions on these grounds [no standing, sovereign immunity, and non-justiciable political question] is contrary to the weight of decision on these issues and because of the importance and urgency of the constitutional questions raised, this court feels obliged to file herein a separate memorandum of decision explaining its reasons for these rulings."

4. We note that some confusion has developed on the question of standing to chal-

302, 306 (2d Cir. 1970); Ashton v. United States, 404 F.2d 95, 97 (8th Cir. 1968), cert. denied, 394 U.S. 960, 89 S. Ct. 1308, 22 L.Ed.2d 561 (1969); United States v. Bolton, 192 F.2d 805, 806 (2d Cir. 1951) (challenge to the legality of the Korean* conflict).[5] This rule of standing has been stated previously in cases which have not involved military reservists. The appellees rely in part on

this difference in urging that they have standing in the present case.

■ Throughout these proceedings, the appellees allege that their lives and livelihood will be placed in jeopardy should they be activated, and assert that the use of American armed forces in Cambodia greatly increases the possibility of such activation.[6]

lenge an "undeclared war." Some of the challenges have been raised as a defense by defendants accused of violating some aspect of the draft law. United States v. Rehfield, 416 F.2d 273 (9th Cir. 1969), cert. denied 397 U.S. 996, 90 S.Ct. 1137, 25 L.Ed.2d 405 (1970); Simmons v. United States, 406 F.2d 456 (5th Cir.), cert. denied, 395 U.S. 982, 89 S.Ct. 2144, 23 L.Ed.2d 770 (1969); Ashton v. United States, 404 F.2d 95 (8th Cir. 1968), cert. denied, 394 U.S. 960, 89 S.Ct. 1308, 22 L.Ed.2d 561 (1969); United States v. Mitchell, 369 F.2d 323 (2d Cir. 1966), cert. denied, 386 U.S. 972, 87 S.Ct. 1162, 18 L.Ed.2d 132 (1967). In *Mitchell* the Second Circuit held that an allegation that the Vietnam conflict was unconstitutional was not a valid defense in a prosecution for failure to report for induction. The court explained that:

"Regardless of the proof that appellant might present to demonstrate the correlation between the Selective Service and our nation's efforts in Vietnam, as a matter of law the congressional power 'to raise and support armies' and 'to provide and maintain a navy' is a matter quite distinct from the use to which the Executive makes of those who have been found qualified and who have been inducted into the Armed Forces. Whatever action the President may order, or the Congress sanction cannot impair this constitutional power of the Congress." 369 F.2d at 324.

The rationale of the court in *Mitchell*, was that the constitutionality or unconstitutionality of the Vietnam conflict was not relevant as a defense in a prosecution for failure to report for induction. This rationale was not directed to the standing of the particular defendant, although elements of such a rationale may properly arise within an analysis of standing.

The language in *Mitchell*, quoted above, has been relied upon in cases which have concluded that a defendant being prosecuted for violation of the draft law has no standing to challenge, as part of his defense, the constitutionality of the Viet-

nam conflict. See United States v. Battaglia, 410 F.2d 279, 284 (7th Cir.), cert. denied, 396 U.S. 848, 90 S.Ct. 73, 24 L.Ed. 2d 97 (1969); Ashton v. United States, *supra*. See also Velvel v. Nixon, 415 F.2d 236, 238 n. 1 (10th Cir. 1969), cert. denied, 396 U.S. 1042, 90 S.Ct. 684, 24 L. Ed.2d 686 (1970).

5. We note that in United States v. Sisson, 294 F.Supp. 511 (D.Mass.1968), the court found that a defendant who had refused induction had standing to challenge the legality of the United States military involvement in Vietnam, even though the same court several years earlier held that a similarly situated defendant did not have such standing. The court stated that two developments had occurred since its earlier decision which necessitated a different holding. First, was the fact that draft calls had become directly correlated to the needs of the conflict in Vietnam. Second, was the practical reality that servicemen ordered to Vietnam had been refused or were unable to get judicial determinations of the legality of the Vietnam conflict, and that if such a right existed, it had to be determined at the time of induction. We do not believe that the *Sisson* rationale provides the appellees in the present case with standing. Appellees have pointed to nothing in their status as reservists which may be directly correlated with either the Cambodian incursion or the larger involvement in Vietnam.

6. The district court as well as the parties in this appeal have discussed injury in terms of the threat to the Reservists of being placed on active duty and serving in Indochina. However, the amended complaint filed in district court also alleged that the plaintiffs had been injured in their status as citizens by the economic loss and hardship of financing the conflict in Indochina as well as destruction of domestic peace and tranquility allegedly caused by that conflict. In view of our conclusion that the appellees as reservists lack standing to bring this action, *a fortiori*, we must conclude that as citi-

The Article III restriction on the judicial power of federal courts to "cases" and "controversies" requires that we examine these contentions to determine whether an actual controversy has been presented by plaintiffs with a "personal stake and interest," Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L. Ed.2d 636 (1972); Jenkins v. McKeithen, 395 U.S. 411, 423, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), against persons with adverse legal interests in a sufficiently immediate adversary context to warrant declaratory relief. Golden v. Zwicker, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

■ Initially, we note that the appellees have failed to allege that the Cambodian incursion has caused them injury in fact. A plaintiff who alleges that he is injured in fact, economically or otherwise, has a personal stake in the outcome of a controversy sufficient to satisfy the requirements of Article III. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).[7] The basis for our conclusion bears not only upon whether a sufficient personal stake has been alleged, but also on whether a sufficiently immediate adversary context has been presented to warrant declaratory relief. The appellees

do not contend that they have been or will be activated for service in Indochina, much less in Cambodia. They contend that they may be so activated as a result of the Cambodian incursion.[8] Thus, their connection with the constitutional guarantee relied upon is contingent upon an event which, at the time of the filing of the complaint, might never occur. Neither actual nor threatened injury is alleged, Jenkins v. McKeithen, 395 U.S., *supra* at 422, 89 S.Ct. 1843, other than the speculative possibility that the appellees may be activated to serve in Indochina. That possibility also exists for others who serve or may be subject to service in the armed forces. Since the injury alleged is not logically linked with their status, appellees have failed to allege a personal stake and interest sufficient to avoid the prohibition against employing "a federal court as a forum in which to air [their] generalized grievances about the conduct of government . . ." Flast v. Cohen, 392 U.S. 83, 106, 88 S.Ct. 1942, 1956, 20 L.Ed.2d 947 (1968). Furthermore, because of the contingent and speculative nature of the injury, the district court was presented with no more than a hypothetical case, Crossen v. Breckenridge, 446 F.2d 833, 839 (6th Cir. 1971), and thus lacked jurisdiction of the action under Article III, Section 2 of the Constitution.

In concluding that the plaintiffs had standing, the trial court apparently re-

---

zens, with a less compelling interest in United States military involvement in Indochina than reservists, the appellees cannot meet the standards for standing. *See* Velvel v. Nixon, 415 F.2d 236, (10th Cir. 1969), cert. denied, 396 U.S. 1042, 90 S.Ct. 684, 24 L.Ed.2d 686 (1970); Kalish v. United States, 411 F.2d 606 (9th Cir. 1969).

7. We recognize that Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970), as well as Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), decided the same day, dealt with standing to seek judicial review of administrative action. Nonetheless, both cases applied the "injury in

fact" test, indicating that such injury is a sufficient, if not necessary, ground for standing under Article III.

8. We note that appellees' allegation that they are injured by the continuing threat of activation resulting from the introduction of United States combat forces into Cambodia has been somewhat undermined by the subsequent congressional proviso, enacted under the Special Foreign Assistance Act of 1971, prohibiting the use of any funds to finance the introduction of United States ground combat forces into Cambodia or to provide United States advisers to or for Cambodian military forces in Cambodia. Pub.L. No. 91–652 § 7(a), 84 Stat. 1942 (noted at 22 U.S.C. § 2411 (1970)).

lied in large measure upon Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed. 2d 947 (1968), in which a taxpayer was held to have standing to attack a federal spending program which allegedly exceeded a specific constitutional limitation upon the exercise of the congressional taxing and spending power.

The trial court in the present case reasoned that a member of the armed forces reserves had the same nexus with the power of the President, as Commander-in-Chief of the armed forces, to order him into the Vietnam conflict, as the taxpayer in *Flast* had with the congressional power under the taxing and spending clause of the Constitution. We cannot agree. In *Flast,* the court explained that the first aspect of the nexus required to establish standing was the showing by a given plaintiff of a logical link between his status and the type of legislative enactment attacked. Thus, reasoned *Flast,* a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of the Constitution. The nexus between the government's power to tax and the people with respect to whom such power is exercised is clear. However, we do not think that the reservists in the present case have established a similarly logical link between their status as reservists and the power of the President as Commander-in-Chief. The plaintiffs' status as reservists is logically linked with the congressional power "to raise and support armies" and "to provide and maintain a navy." But there is a distinction between that congressional power to raise and support armies and the power of the President, which is challenged in this case, as Commander-in-Chief. United States v. Rehfield, 416 F.2d 273, 275 (9th Cir. 1969), cert. denied, 397 U.S. 996, 90 S.Ct. 1137, 25 L.Ed.2d 405 (1970); United States v. Mitchell, 369 F.2d 323, 324 (2d Cir. 1966), cert. denied, 386 U.S. 972, 87 S.Ct. 1162, 18 L.

Ed.2d 132 (1967). We therefore think that the district court's reliance upon Flast v. Cohen, *supra,* was the essence of its error.

The trial court also pointed out those cases where servicemen or registrants were held to have standing to challenge specific orders to report for duty in South Vietnam. Berk v. Laird and Orlando v. Laird (decided together), 443 F.2d 1039 (2d Cir.), cert. denied, 404 U. S. 869, 92 S.Ct. 94, 30 L.Ed.2d 113 (1971). In the case now before us, however, neither of the two remaining plaintiffs was alleged to be under an order to report to Vietnam or any combat area. There is no showing that they have even been called for active duty. As such, neither *Berk* nor *Orlando* is in point.

■ Holmes v. United States, 391 U. S. 936, 88 S.Ct. 1835, 20 L.Ed.2d 856 (1968) (denying certiorari), also relied upon by the trial court, is a case in which as a defense to conviction for failure to report for civilian work, a conscientious objector challenged the constitutionality of compulsory civilian duty in peace time. The trial court in the present case relied upon the opinions of Mr. Justice Stewart and Mr. Justice Douglas. The former concurred in the denial of certiorari, but stated that if the issue had been the power, in the absence of a declaration of war, to *compel* military service in armed conflict overseas he would have voted to grant the writ. This may perhaps be construed to approve standing where a serviceman is under orders for overseas combat duty. That is not the situation here. Mr. Justice Douglas dissented on broad grounds as he has consistently done in all of the cases where the Supreme Court has voted to deny certiorari to review the decision of a lower court refusing to decide the constitutionality of the Vietnam war, or the Selective Service laws, on grounds of lack of standing, non-justiciable political question or sovereign immunity.[9] The dissent of one Justice

---

9. Mr. Justice Douglas dissented to the Court's denial of the writ of certiorari

in: Massachusetts v. Laird, 400 U.S. 886, 91 S.Ct. 128, 27 L.Ed.2d 130 (1970)

to the Supreme Court's denial of certiorari is, of course, not controlling. And the consistently expressed views of Mr. Justice Douglas on the issues in question pointedly emphasize the equally consistent refusal of the majority of his Brothers to grant certiorari in those cases wherein the issues have been tendered. *Holmes* is not authority for a finding of standing by the trial court here. United States v. Sisson, 294 F. Supp. 511 (D.Mass.1968) is the only case cited which holds that one who refuses to be inducted has standing to challenge the constitutionality of the Vietnam war.[10] We think that case is distinguishable.[11]

On principle as well as upon the weight of authority, we are persuaded to the opposite view.

(challenge to the participation of the United States in the Vietnam war); McArthur v. Clifford, 393 U.S. 1002, 89 S. Ct. 487, 21 L.Ed.2d 466 (1968) (challenge to the legality of an undeclared war); Hart v. United States, 391 U.S. 956, 88 S.Ct. 1851, 20 L.Ed.2d 871 (1968) (defense of illegality of draft in peacetime to convictions for failure to report for civilian work); Holmes v. United States, 391 U.S. 936, 88 S.Ct. 1835, 20 L.Ed.2d 856 (1968) (defense of illegality of draft in peacetime to conviction for failure to report for civilian work); Mora et al. v. McNamara, 389 U.S. 934, 88 S.Ct. 282, 19 L.Ed.2d 287 (1967) (challenge to right of Executive to order one to participate in undeclared war and the bearing of treaty obligations on undeclared war); Mitchell v. United States, 386 U.S. 972, 87 S.Ct. 1162, 18 L.Ed.2d 135 (1967) (defense of illegality of war to conviction for refusal to be inducted).

10. In that case the district court then proceeded to hold that the defense presented a non-justiciable political question outside the court's jurisdiction.

11. *See* note 5 *supra.*

12. These questions have been before the courts of several other circuits. Holding that the question is political and non-justiciable: Commonwealth of Massachusetts v. Laird, 451 F.2d 26 (1st Cir. 1971) (where Executive and Legislative Branches act together, the constitutional provision that Congress shall have power to declare war has not been breached); DaCosta v. Laird, 448 F.2d 1368 (2d

■ Our conclusion that appellees lack standing precludes us from passing upon other constitutional questions presented by the record. Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); Dandridge v. Williams, 397 U.S. 471, 475–476, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Rescue Army v. Municipal Court, 331 U.S. 549, 568–569, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947); Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 341, 346–348, 56 S.Ct. 466, 80 L.Ed. 688 (1966) (Brandeis, J., concurring); Taylor v. United States, 320 F.2d 843, 846–847 (9th Cir. 1963). We, therefore, do not reach the constitutional question of whether appellees' challenge to the legality of the United States military involvement in Indochina presents a justiciable question,[12] or is

Cir. 1971), cert. denied, 405 U.S. 979, 92 S.Ct. 1193, 31 L.Ed.2d 255 (1972); Orlando v. Laird, 443 F.2d 1039 (2d Cir.), cert. denied, 404 U.S. 869, 92 S.Ct. 94, 30 L.Ed.2d 113 (1971); Simmons v. United States, 406 F.2d 456 (5th Cir.) cert. denied, 395 U.S. 982, 89 S.Ct. 2144, 23 L.Ed.2d 770 (1969); Luftig v. McNamara, 126 U.S.App.D.C. 4, 373 F.2d 669, cert. denied, 387 U.S. 945, 87 S.Ct. 2078, 18 L.Ed.2d 1332 (1967); United States v. Sisson, 294 F.Supp. 511 (D. Mass.1968); Velvel v. Johnson, 287 F. Supp. 846 (D.Kan.1968), aff'd on other grounds, sub nom. Velvel v. Nixon, 415 F.2d 236 (10th Cir. 1969), cert. denied, 396 U.S. 1042, 90 S.Ct. 684, 24 L.Ed.2d 686 (1970). *Cf.* Sarnoff v. Connally, 457 F.2d 809 (9th Cir. 1972). The Massachusetts action in Commonwealth of Massachusetts v. Laird, *supra*, was filed in the District Court of Massachusetts pursuant to an act of its legislature directing its Attorney General to bring an action in the Supreme Court testing these issues, or in the event such a course were not possible, an action in a lower federal court. 451 F.2d at 28. A motion for leave to file a bill of complaint in the Supreme Court was denied, Justice Douglas dissenting. 400 U.S. 886, 91 S.Ct. 128, 27 L.Ed.2d 130 (1970).

Holding other complaints challenging the legality of an "undeclared war" barred for lack of standing: Pietsch v. President of United States, 434 F.2d 861 (2d Cir. 1970); Velvel v. Nixon, 415 F.2d 236, 238 n. 1 (10th Cir. 1969), cert. denied, 396 U.S. 1042, 90 S.Ct. 684, 24

barred by the doctrine of sovereign immunity.

The order of the district court is reversed, with directions to dismiss the amended complaint.

L.Ed.2d 686 (1970); Kalish v. United States, 411 F.2d 607 (9th Cir. 1969); United States v. Battaglia, 410 F.2d 279, 284 (7th Cir.), cert. denied, 396 U.S. 848, 90 S.Ct. 73, 24 L.Ed.2d 97 (1969); Ashton v. United States, 404 F.2d 95 (8th Cir. 1968), cert. denied, 394 U.S. 960, 89 S.Ct. 1308, 22 L.Ed.2d 561 (1969). *Cf.* United States v. Rehfield, 416 F.2d 273 (9th Cir. 1969), cert. denied, 397 U.S. 996, 90 S.Ct. 1137, 25 L.Ed.2d 405 (1970); Simmons v. United States, 406 F.2d 456 (5th Cir.), cert. denied, 395 U.S. 982, 89 S.Ct. 2144, 23 L.Ed.2d 770 (1969); United States v. Mitchell, 369 F.2d 323 (2d Cir. 1966), cert. denied, 386 U.S. 972, 87 S.Ct. 1162, 18 L.Ed.2d 132 (1967).