**UNITED STATES of America, Appellee,**

v.

**Steven Wayne TRIMM, Appellant.**

**No. 142, Docket 33298.**

United States Court of Appeals Second Circuit.

Argued Sept. 17, 1969.

Decided Oct. 9, 1969.

William Leibovitz, Ellis, Stringfellow, Patton & Leibovitz, New York City, for appellant.

Paul V. French, Asst. U. S. Atty., Northern District of New York (James M. Sullivan, Jr., U. S. Atty., Northern District of New York, on the brief), for appellee.

Before MOORE, HAYS and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Appellant Steven Wayne Trimm was convicted by a jury of refusing to report for and submit to induction into the armed forces, in violation of 50 U.S.C. App. § 462(a). He was sentenced to four years imprisonment.

Trimm was ordered by his local draft board in Hudson, New York, to report for induction March 12, 1968. He went to the board's office and also to the examining station in Albany, but there he declined to undergo any part of the induction processing.

Trimm's scheduled induction received advance publicity, and Marine Lt. Col. Bronislaus A. Gill, commanding officer at the examining station, was besieged with reporters from 7 a. m. onward that day. Because of this, Col. Gill intercepted Trimm, his parents and Trimm's minister when he was informed of their arrival and invited them into his private office. There he explained to them the regulations governing induction and its refusal, and he and Trimm "discussed different aspects about the draft." Col. Gill advised Trimm to proceed with the scheduled physical and mental examinations before making a final decision, since he might in any event be found unacceptable for induction. Gill testified that at that point Trimm "specifically told me no, he would not care to go through any part of it, he would not be inducted."

Col. Gill then called another officer and read portions of Army Regulations 601–270, informing Trimm of the statutory penalties for refusing to comply with processing instructions and stating that an "uncooperative" registrant will be requested but not required to make a signed statement of refusal to comply with instructions. Trimm refused to make such a written statement. Col. Gill "asked him again" if he was willing to proceed, and Trimm once more refused. He left the center and was subsequently indicted by the grand jury.

The appellant, who was 20 years old and had completed about one semester of college, was represented by counsel at arraignment, but he stated at a pretrial appearance that he no longer had a lawyer. In answer to the court's inquiries, he said that he had spoken to many attorneys who were reluctant to defend him because of the "approach" he demanded they take to his defense. He added that he did not lack the means to retain counsel, and he concluded that

he was still "conferring with some" in hope of securing representation.

At the trial one month later, Trimm again appeared without counsel. The trial court a second time advised him to obtain a lawyer, and engaged him in a colloquy, explaining both this right and his right to conduct his own defense. Finally, the court suggested that a lawyer might be appointed simply to sit with him and advise him on procedural aspects of his self-defense, if he so desired. Trimm expressed interest in this last offer, but said, "He will not, however, be speaking for me. He would just be advising me when to make motions, and so forth." But when he was told that the trial could not proceed that day under this arrangement, since time would be required to appoint such a lawyer-assistant, Trimm then abandoned the offer and elected to act as his own attorney and to go forward at once.

The appellant actually presented · no legal defense, but took the stand solely to demonstrate the sincerity of his own beliefs to the jury. He made no attempt to discuss the legality of particular wars or of the draft, but maintained simply that he wanted to speak for himself, to explain his actions briefly without any intervening party attempting to "snow someone with a lot of rhetoric." He himself testified that he did refuse to submit to induction, and the jury found him guilty of this offense.

On this appeal, Trimm asserts that he was not adequately warned of his constitutional right to counsel and did not waive it, and also that there was insufficient evidence as a matter of law to convict him of refusing induction.

While the Sixth Amendment protects an accused's right to counsel in all criminal proceedings, this right may be waived; and, indeed, such a waiver must be recognized in order to protect an accused's corresponding constitutional right to act as his own attorney. United States ex rel. Maldonado v. Denno, 348 F.2d 12 (2 Cir. 1965), cert. denied, DiBlasi v. McMann, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966); United States v. Plattner, 330 F.2d 271 (2 Cir. 1964). In a case such as this, it is necessary to examine the record to determine whether, after an appropriate colloquy with the trial court, a defendant has waived his right to counsel or elected to conduct his defense *pro se* with knowledge of what he was doing and "with eyes open." United States ex rel. Higgins v. Fay, 364 F.2d 219, 222 (2 Cir. 1966); United States v. Plattner, *supra*.

■ The record in this case makes clear that Trimm knowingly elected to proceed *pro se*. He was advised of his rights by the court below at each stage of the proceedings, and was told that a lawyer might be appointed to assist him as soon as it appeared that he no longer sought counsel of his own choice. There was never a suggestion that appellant's inability to secure a lawyer was caused by any political unpopularity of his beliefs. Instead, he maintained throughout the trial that above all else he wished to speak for himself publicly, without intermediaries. His difficulties arose from inability to find a lawyer willing to undertake the purely advisory role Trimm contemplated for counsel; and even when offered such assistance, he rejected it because he preferred that the trial go forward as scheduled. This case, therefore, lacks the resemblance the appellant suggests to Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), in which an alien defendant in a wartime espionage case experienced unique political difficulties in obtaining counsel.[1] Nor is this a case in which a de-

---

1. In any case, the trial court's actions satisfied the test for finding a waiver of the right to counsel suggested by Mr. Justice Black, in an opinion concurred in by three other members of the Court, in *Von*

*Moltke,* 332 U.S. at 723–724, 68 S.Ct. at 323:

   " 'This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining wheth-

fendant suggested in any manner that he needed additional time before trial to secure an attorney in whom he had confidence to defend a politically unpopular position. See United States v. Mitchell, 354 F.2d 767 (2 Cir. 1966).

■ The appellant's second contention is that no evidence of his intent to refuse to submit to induction could be legally sufficient to support a jury verdict in the absence of a showing that he was given a clear opportunity to express his intention by action. Unless he was forced to obey or refuse to obey a specific order, such as the traditional command to step forward, Trimm contends, he did not actually reach the point of refusing to submit to induction.

Army Regulations 601–270, which are designed to avoid ambiguity in cases of refusal to submit to induction, define a special ceremony in which a registrant indicating an intent to refuse to submit is placed in a formal setting likely to focus his thoughts into a comprehending choice. If he expresses such an intent, he is first given an opportunity to submit. Then he is taken aside, the penalties for refusal are explained to him, and he is given a chance to reconsider. This procedure confronts a registrant with the necessity of acting, either by proceeding to comply with induction instructions or by refusing to do so. See Chernekoff v. United States, 219 F.2d 721 (9 Cir. 1955); United States v. Hoffman, 137 F. 2d 416 (2 Cir. 1943). While a registrant may comply with orders until he is required to take the symbolic step forward and then refuse at that point, he may on the other hand refuse to obey instructions at some earlier point in the induction process. In the latter case, he may still manifest his intent so clearly that unwillingness to submit to induction may be legitimately inferred. United States v. Meyers, 410 F.2d 693 (2 Cir. 1969). One way he may do this is by refusing to undergo processing after consideration of the consequences in the formal ceremony described; and it was within its power and competence for the jury to infer such an intent from Trimm's conduct.

Although Trimm chose not to make the optional written statement attesting to this act of refusing to submit, see United States v. Gutknecht, 283 F.Supp. 945 (D.Minn.1968), aff'd 406 F.2d 494, 495 (8 Cir. 1969), this is not the only type of evidence which will suffice to show that a registrant has knowingly chosen not to comply under circumstances of the requisite formality for a comprehending choice. United States v. Meyers, supra; Rhyne v. United States, 407 F.2d F.2d 657 (7 Cir. 1969). The testimony in this case, including Trimm's own, was adequate for this purpose.

Under the circumstances of this case, the evidence was also sufficient even though Col. Gill testified that he "asked"

er there is an intelligent and competent waiver by the accused.' To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." While the trial court did not cross-examine Trimm with specificity about his apprehension of each of these enumerated factors, we find its examination of all the circumstances under which the plea was tendered adequate. In this area each case must be governed by its own particular facts. Contrast Molignaro v. Smith, 408 F.2d 795 (5 Cir. 1969); Meadows v. Maxwell, 371 F.2d 664 (6 Cir. 1967).

the appellant to proceed with induction processing, after the formal ceremony, instead of "directing" him to do so. In the context of the prescribed ceremony conducted in Col. Gill's office, the repeated requests that Trimm proceed with induction constituted a "direction" to undergo examinations within the meaning of the governing Army Regulations.[2] There was no omission of an express procedural step in the induction process mandated by Army Regulations. Cf. Welsh v. United States, 404 F.2d 1078 (9 Cir. 1968); Briggs v. United States, 397 F.2d 370 (9 Cir. 1968). It is not necessary that there be testimony of use of the specific word "direct."

Affirmed.

2. Army Regulations 601–270, ch. 3, § III, ¶40c(4), states:

"A registrant previously forwarded for pre-induction examination who refused to take any part or all of pre-induction tests and examinations and who is returned for immediate induction and again refuses to take any part or all' of the prescribed tests and examinations will be informed that failure to submit to *such examinations as the commanding officer of the induction station will direct* is a violation of Selective Service regulations and punishable as such." [Emphasis added.]