**UNITED STATES of America,**
**Appellee,**

v.

**James A. SPENCER, Appellant.**

**No. 668, Docket 35118.**

United States Court of Appeals, Second Circuit.

Argued Feb. 19, 1971.

Decided March 24, 1971.

Barry J. Cutler, Asst. U. S. Atty. (Stewart H. Jones, U. S. Atty., D. Conn., on the brief), for appellee.

Murray M. Segal, New York City, for appellant.

Before LUMBARD, Chief Judge, SMITH and FEINBERG, Circuit Judges.

LUMBARD, Chief Judge:

James A. Spencer appeals from a judgment of conviction entered on June 2, 1970 by Judge Timbers in the District of Connecticut after trial without a jury. Spencer was convicted on two counts of having violated 18 U.S.C. § 2314, which makes it a crime to transport or cause to be transported in interstate commerce any falsely made or forged security, knowing the same to be falsely made or forged. He was sentenced to concurrent terms of five years imprisonment. We affirm the conviction.

The indictment charged Spencer in two separate counts with causing falsely made and forged checks to be transported from Connecticut to New Jersey, knowing that the checks had been falsely made and forged. Count I involved a $750 check dated June 20, 1968, drawn on the First Trenton National Bank, Trenton, New Jersey, payable to "John Kelly" and signed "Anthony J. Gasco." Count II involved a $150 check, dated June 18, 1968, drawn on the same bank and between the same parties.

The government's proof showed that the two checks in question were stolen from the firm of Gasco Builders in Trenton, New Jersey, and that they were forged with the signature of "Gasco," which did not represent the name of anyone connected with the firm. It showed further that on June 21, 1968, a person purporting to be John Kelly opened a new account at the Second National Bank of New Haven, Westville branch, and that later that day the person purporting to be Kelly cashed the $750 check in a split deposit transaction—depositing $350 and taking $400 in cash. The government proved, too, that the $150 check was cashed at a Sears, Roebuck & Co.

store in Hamden, Connecticut by a person purporting to be John Kelly.

A government fingerprint expert testified that a latent fingerprint on the deposit slip used in the split transaction at the bank in New Haven was, on the basis of a comparison with a specimen taken from Spencer, Spencer's print. A government handwriting expert testified that he had compared the "John Kelly" endorsement on the $750 check with the signature card used to open the account in New Haven and also with the signature of "Anthony Gasco" on the two checks; he stated that, although he could not be sure, there were "similarities which indicated that they were probably prepared by the same writer." One eyewitness—Cheryl Carlucci, the cashier at Sears—identified Spencer; she said that he was the person who had cashed the check at Sears. Finally, the government sought to prove that a photograph taken by a "Regiscope" machine of the man and the check cashed at Sears, simultaneously, was a likeness of Spencer.

Spencer testified in his own behalf and denied cashing either check, saying that he was at home in Pennsylvania at the time.

On March 9, 1970, when Spencer was first scheduled to appear for a plea before Judge Zampano, Spencer made it clear that he wished to represent himself *pro se.* Judge Zampano deferred entry of plea and made an interim appointment of counsel, Mr. Robert Levine, for the purpose of meeting with Spencer, discussing preparation for trial, and helping Spencer decide whether he would still wish to proceed *pro se.* On March 23, Judge Timbers entered a plea of not guilty on Spencer's behalf and, noting that Spencer still wished to proceed *pro se,* asked assigned counsel to remain available until further proceedings could be held before Judge Zampano. Spencer had not changed his position at a hearing before Judge Zampano on March 30, and thereafter Mr. Levine moved to be relieved as counsel. Finally, at a hearing on May 10, Judge Zampano told Spencer that he would be better advised to accept the appointment of counsel, but having determined that Spencer still wished to proceed *pro se,* he granted Levine's motion to be relieved. Thereafter, at all proceedings below including the trial, Spencer represented himself *pro se.* On this appeal, a new attorney was assigned to represent Spencer.

Spencer's first two arguments are (1) that there was no proof at trial that he *knew* that the checks were forged or falsely made—an assential element of the crime—and (2) that there was insufficient evidence connecting him with the crimes charged so that Judge Timbers could not possibly have found beyond a reasonable doubt that he had committed those crimes. We reject these contentions.

Mrs. Carlucci positively identified Spencer from memory as the person who cashed the $150 check at Sears. She also identified Spencer as the subject of the "Regiscope" photograph of the person who cashed that check. The testimony of the fingerprint expert linked Spencer to the $750 check, for according to him the latent fingerprint on the deposit slip used in the split transaction at the New Haven bank was identical to a fingerprint obtained from Spencer at the time of his arrest. The testimony of the handwriting expert, while somewhat equivocal, further supports this connection.

Surely this evidence, if believed, was sufficient for Judge Timbers to find beyond a reasonable doubt that Spencer committed the crimes charged. Similarly, it constituted ample circumstantial proof on which the trier of fact could find that Spencer knew that the checks were forged or falsely made.

Spencer's third argument is that he was denied his Sixth Amendment right to effective assistance of counsel when the district court granted the assigned counsel's motion to be relieved. Spencer's brief concedes that Judge Zampano did much to induce Spencer to accept the assigned counsel when Spencer

wanted to proceed *pro se*. But it argues that at the time of Mr. Levine's motion to be relieved—the May 10 hearing— "defendant's original disinclination to avail himself of counsel had abated . . . and the defendant had acquiesced in Mr. Levine's representing him at trial." Thus, according to Spencer's brief, Judge Zampano's granting of Levine's motion to be relieved was a violation of Spencer's right to counsel, since when Spencer "finally saw the light and wanted effective counsel, he found himself left with none."

The transcript of the May 10 hearing, however, shows this contention to be erroneous. Spencer's original disinclination to have counsel had in no way abated, and he clearly did not want Mr. Levine as his attorney on May 10 any more than he had previously. Moreover, Judge Zampano did everything required of him by prior decisions of this Court to ensure that Spencer knew what he was waiving. In our previous decisions on this issue, we have looked in particular to determine whether there has been a full and calm discussion between the judge and the defendant, whether the defendant understood that he had a choice between proceeding *pro se* and with assigned counsel, whether the defendant understood the advantages of having one trained in the law to represent him, and whether the defendant had the capacity to make an intelligent choice. See United States ex rel. Maldonado v. Denno, 348 F.2d 12 (2d Cir. 1965), cert. denied sub nom. DiBlasi v. McMann, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966); United States v. Plattner, 330 F.2d 271 (2d Cir. 1964). See also United States ex rel. Jackson v. Follette, 425 F.2d 257, 259 (2d Cir. 1970); United States v. Trimm, 416 F. 2d 1145, 1147 (2d Cir. 1969); United States ex rel. Anderson v. Fay, 394 F.2d 109, 110 (2d Cir. 1968); United States ex rel. Higgens v. Fay, 364 F.2d 219 (2d Cir. 1966).

The record plainly shows that these elements were present here. Even after two previous hearings into Spencer's need for assigned counsel and his understanding of the problems of proceeding *pro se*, Judge Zampano again addressed the defendant on May 10, 1970 before ruling on Mr. Levine's motion to be relieved. Judge Zampano said that he appointed counsel because he had hoped that Spencer would change his mind by realizing his folly and that Spencer might have an attorney to rely on if he needed help at trial. He also thought that the interim assignment of counsel would help Spencer prepare for trial, even if he held fast to his position. That same morning, before counsel was relieved, Judge Zampano had received a written communication from Spencer stating he had no objection to his counsel's motion to withdraw. Nevertheless, Judge Zampano said:

> "There is no question that Mr. Spencer has a right to defend pro se. In my opinion, it is contrary to common sense, and he is waiving something he is entitled to under the Sixth Amendment. But all I can do is advise Mr. Spencer that it is advisable to have a lawyer, that a lawyer is specially skilled and trained in the law, and that long experience of Judges has resulted in the firm conviction that a defendant is best represented by a man trained to represent him.
>
> "There is little question in my mind that Mr. Spencer's pro se request is based on his own choice; his eyes are wide open and he knows what he is doing. But, in a tremendous excess of caution, I will once against this morning go over this business of the motion to withdraw, and then we will get to this business of the habeas corpus and some other things."

A few minutes later, after personally addressing the defendant and discussing disagreements Spencer had had with his attorney, Judge Zampano inquired as follows:

> "I want to find out whether or not, when I said here a few moments ago that on two or three occasions the Court was satisfied that you wished to

proceed pro se, you realized what your rights were, you understood everything the Court told you about having Court-appointed counsel, but that you, yourself, wanted to defend yourself.

"Am I right when I say that or am I wrong?

"The Defendant: That's correct. That's absolutely correct.

"The Court: All right. Are you still of the same mind?

"The Defendant: That's correct, your Honor."

Finally, after a continuing discussion into the problems Spencer might be facing by allowing his attorney to withdraw, Judge Zampano asked whether Spencer of his own free will voluntarily consented to his counsel withdrawing and still wished to proceed *pro se*. When Spencer said he did, the motion by counsel to withdraw was granted.

In view of these circumstances, we hold that Judge Zampano fully and skillfully discharged the duty of the court fully to inform the defendant of the consequences and difficulties of representing himself without the aid of counsel.

■ Nevertheless, in light of the increasing number of cases where an indigent defendant wishes to proceed *pro se*, we take this opportunity to indicate what we feel would be a desirable practice for district judges faced with such a situation in the future. It seems to us that no matter how intelligent or educated a layman might be, he lacks the skill and knowledge to defend himself adequately. See Powell v. Alabama, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932), where the Supreme Court stated:

"Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence."

Cf. Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The trial in the instant case bears this out. Despite Spencer's appearance of intelligence and articulateness, he was obviously at considerable disadvantage in coping with the government's handwriting and fingerprint experts and in cross-examining the bank teller who identified him.

Similarly, in almost all cases, even the most intelligent and educated layman lacks a sufficient understanding of what he is giving up when he waives his right to counsel. This is particularly true where, as here, the defendant is in prison during the pretrial proceedings.

For these reasons, we suggest that the district courts would be well advised to offer as an alternative to an indigent defendant who wishes to proceed *pro se* the assistance of appointed counsel available as a resource to the extent that the defendant may wish to make use of his services. Such assigned counsel would be available at least to meet with the prosecuting attorney, to see that discovery procedures are followed and necessary motions are made, to confer with the defendant, to be present in the courtroom during trial, and otherwise to do those things which the defendant is unable to do for himself. This alternative should not be offered, however, until after the defendant has clearly and unambiguously waived his right to full representation; and obviously such a determination can be made only after a complete and penetrating examination by the trial judge, such as that conducted by

**1052**

Judge Zampano here, of all the circumstances under which the defendant's election is made. See Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

Of course, if the defendant with full realization of what he is doing, rejects even the kind of assistance which we have recommended as an alternative—and the court should make clear that his own free conduct of his defense would be untrammeled to the extent he desires—then he should be permitted, as Spencer was, to proceed completely on his own.

Affirmed.