UNITED STATES of America, Appellee,

v.

James Paul DOMBROUSKI, Appellant.

No. 20633.

United States Court of Appeals, Eighth Circuit.

July 29, 1971.

Robert D. Metcalf, Minneapolis, Minn., for appellant.

Neal J. Shapiro, Asst. U. S. Atty., Robert G. Renner, U. S. Atty., D.Minn., Minneapolis, Minn., for appellee.

Before MATTHES, Chief Judge, VAN OOSTERHOUT, Circuit Judge, and EISELE, District Judge.*

MATTHES, Chief Judge.

A jury found appellant guilty on two counts of a three-count indictment. Count I charged that he had knowingly and willfully committed a depredation against the property of the United States in violation of 18 U.S.C. § 1361. Count III charged that appellant had unlawfully and knowingly failed and neglected to perform a duty in the execution of the Selective Service Act of 1967 in that he failed to submit to an Armed Forces physical examination in violation of 50 App. U.S.C. § 462. Count II of the indictment was dismissed before trial.

The district court, Judge Neville, sentenced appellant to six months in prison on Count I and two years in prison on Count III, the sentences to be served consecutively. Although appellant appealed from the conviction under both counts of the indictment, he has abandoned the appeal from the judgment on Count I and has limited his contentions of error to Count III.

The core of appellant's attack goes to the sufficiency of the evidence to make a submissible case, the broad claim being that the court should have granted appellant's motion for judgment of acquittal. More specifically, appellant asserts that he was entitled to be acquitted as a matter of law because of the failure of the Army officials to comply literally with certain Army regulations which are set forth below.

Inasmuch as the facts bear heavily on whether the court properly permitted the jury to pass upon the crucial question of whether appellant had refused to submit to a physical examination within the ambit of the applicable statutes, regulations

---

* United States District Judge, Eastern District of Arkansas, sitting by designaion.

and decisional law, we will review the pertinent evidence in some detail.

Appellant registered with his local board on July 10, 1967, and was successively classified I–S–H, I–A, II–S, and I–A; the final classification as I–A occurring in September of 1968. Thereafter, he filed an SSS Form 150 in order to gain classification as a conscientious objector. This claim was denied by the local board which also refused to reopen the classification on appellant's personal appearance before the board. The Minnesota State Appeal Board by unanimous vote denied appellant's request for a I–O classification on March 26, 1969.

Appellant's Selective Service file contains correspondence and literature from him which evinces a strongly recalcitrant and defiant attitude toward all persons occupying official status in the Selective Service System. By way of illustration, appellant did, on or about November 18, 1968, turn in his registration certificate and made numerous written statements to the effect that he would not carry the registration card.[1]

It is also apparent from the testimony of several witnesses that appellant had counseled other registrants and advised them of their rights prescribed in the Selective Service Regulations reproduced in 32 CFR, and in the Army regulations. Appellant and his associates were jointly engaged with the Twin-City Draft Information Center and with the Resistance Action Project under the acronym RAP.

This brings us to the series of events which took place on July 11, 1969, viewed, as we must, in accordance with the evidence most favorable to the government. Appellant had been ordered to report for a physical examination on June 18, 1969, at Olivia, Minnesota. At his request, the place of examination was changed to Minneapolis, and he was directed to report to the Armed Forces Entrance and Examining Station in Minneapolis on July 11 for the physical.[2] Appellant arrived at the examining station at approximately 6:00 a. m. on the appointed day, accompanied by other young men who, with appellant, had gone to the AFEES almost daily to counsel registrants and to vocalize protestations against cooperation with the conscripting agency.

Shortly after arriving at the building in which the station was located, appel-

---

1. Indicative of appellant's attitude is the following information included in Form 127 "Current Information Questionnaire" filed with the local board of Olivia, Minnesota, on June 17, 1969, placed in appellant's Selective Service file which the board maintained, which file was introduced into evidence:

SERIES IV.—PRESENT OCCUPATION

1. I am now employed as a (give full title: for example, bricklayer, farmer, teacher, auto mechanic, steel worker. If not employed, so state)—Professional Revolutionary

2. I do the following kind of work. (Give a brief statement of your duties. Be specific)—Carry out subversive tactics.

3. My employer is (Name of organization or proprietor, not foreman or supervisor; enter "Self" if self-employed)—Castro, Uncle Ho, chairman Mau and their friends.

(Address of place of employment—Street, or R.F.D. Route, City and State) —Anywhere in the United States whose business is (Nature of business, service rendered, or chief product)—Head of the World's Revolutionary Struggle.

4. I have been employed by my present employer since (Month and year) October 1968

5. Other occupational qualifications, including hobbies, I possess are—Draft Resistance and Counseling or (Aiding and abetting to desert or resist the Draft).

6. I speak fluently the following foreign languages or dialects—underground dialect (slang).

7. I read and write well the following foreign languages or dialects—same as above.

2. Form 223, the order to report for the physical examination, informed appellant that if he failed to report as directed, he would be subject to fine and imprisonment under the provisions of the Military Selective Service Act of 1967.

lant, accompanied by other protestors, entered the room where the registrants were required to report for the examination. First one and then another of appellant's cohorts exhorted registrants present for physical examinations on American foreign policy and advised them of the nuances of the draft laws. The record shows that as a result of the speeches and declarations of the protestors, and the responding catcalls from others who did not share their views, the time of the two duty officers was consumed with escorting several of appellant's friends from the room. All of this created an atmosphere of bedlam, chaos and confusion by the time appellant was called forward to receive the applicable forms incident to his examination. To aggravate the situation, appellant upon being handed the forms proceeded to set them afire, ripped them apart and according to evidence favorable to the government, appellant then left the examining station. Later, on the same day, appellant was arrested on warrant at the Draft Information Center.

It is conceded that the procedure prescribed in Army Regulation 601–270 was not followed by the officials at the examining station. The government, however, contends that the appellant's actions made it impossible, for practical purposes, to comply with the regulation.

After preliminary proceedings, the case went to trial on June 4, 1970. Despite the strong oral and written admonition by Judge Neville that appellant refrain from undertaking to represent himself, the appellant insisted in conducting his own defense and Judge Neville ultimately acquiesced. Out of an abundance of caution, the judge appointed a competent lawyer who had participated in the pre-

trial proceedings and directed him to remain in the courtroom to consult with and advise appellant when called upon by appellant or when the lawyer sensed an obligation to act for him. The appellant conducted his defense with remarkable acumen. He made an opening statement, cross-examined government witnesses, made objections to questions by the prosecutor, some of which were sustained, and made a logical closing argument to the jury. The record of the trial leaves us with the firm conviction that appellant is intelligent and certainly knowledgeable in the area of Selective Service law, including not only the statutes and regulations but some of the opinions of the Supreme Court of the United States, e. g. Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970).

The focal issue at trial was whether appellant had failed in the technical sense to submit to a physical examination. Although he concededly did not undergo an examination, he attempted to justify his refusal on the ground that he had not been warned of the consequences of his refusal as required by Army Regulation 601–270, Section II. "Preinduction Processing," 3–5c(1).[3]

Appellant was adamant in advocating in the trial that the provisions of the regulations quoted in the margin are absolutes. He asserted that despite the bizarre circumstances attending the contemplated examination on July 11 which was aborted by appellant's unlawful action (burning and tearing the government processing papers, the subject of Count I of the indictment), and his other defiant conduct, the Army officers were still required somehow to counsel and advise appellant of the potential consequences of his refusal to submit himself

3. "A registrant who refuses to take part in some or all of the required processing, testing, or examinations will be counseled as to the seriousness of his action, and advised that persistence in such action will necessitate return of him and his records to his Selective Service local board with a report of his refusal. He will be advised that a consequence of his refusal may be prosecution for a vio-

lation of the Military Selective Service Act of 1967 and, if convicted, he may receive punishment of not more than 5 years imprisonment or a fine of not more than $10,000, or both. If he still persists in refusing to take part in some or all of the required processing, testing, or examinations, he will be returned to his Selective Service local board."

for a physical examination. The court declined to adopt that theory, but concluded, correctly we think, that whether counseling and advising was excused in light of the unusual events which occurred at the crucial time was an issue of fact for the jury to determine. Accordingly, the court after reading the applicable regulations to the jury gave this instruction:

> "In considering these regulations, however, you may consider the circumstances surrounding the occurrences the morning of July 11, 1969, as to whether he, the defendant himself, created or assisted in creating such a situation that the giving and reading of the warnings provided in these regulations became impractical and not feasible."

The record fails to show any objection to the instruction. The jury by its verdict finding the appellant guilty under Count III obviously resolved this fact question against the appellant.

Appellant adheres to his trial position and contends on appeal that, irrespective of what may occur during the processing of a registrant for examination, a failure to comply with the regulation relating to counseling and advising the registrant is a complete defense. From this premise, it is argued that the court should have acquitted appellant as a matter of law and that, consequently, we should reverse the judgment of conviction.

We approach the determination of the question at hand mindful that appellant was charged with, tried for and convicted of violating 50 App. U.S.C. § 462 which provides, in effect, that any member of the Selective Service System who knowingly fails or neglects to perform any duty prescribed by certain enumerated sections of the statutes or the regulations made thereunder, shall be subject to prosecution and punishment by imprisonment or fine, or both. 32 CFR § 1628.16 in turn provides that it shall be the duty of the registrant to report for Armed Forces physical examination at the time and place stated in the order of the local board (SSS Form 223). Neither § 462 nor Regulation 1628.16 speaks in terms of counseling or advising a registrant who refuses to submit to physical examination or to induction. However, complimenting § 462 and Regulation 1628.16 is Army Regulation 601–270, § II, Para. 3–5(c), supra, apparently designed to avoid ambiguity in conduct constituting refusal to perform a mandated duty. As shown, the appellant strongly relies on the latter Army Regulation and asserts that his construction of this regulation is supported by Chernekoff v. United States, 219 F.2d 721 (9th Cir. 1955), cited with approval in United States v. Trimm, 416 F.2d 1145 (2d Cir. 1969); United States v. Kroll, 402 F.2d 221 (3rd Cir. 1968), cert. denied 393 U. S. 1043, 89 S.Ct. 672, 21 L.Ed.2d 592 (1969); United States v. Sloan, 302 F. Supp. 596 (N.D.Cal.1969); United States v. Haifley, 300 F.Supp. 355 (D.Colo. 1969).

In all of the foregoing cases, the prosecution was under 50 App. U.S.C. § 462 for failure of the registrant to submit to *induction*. Appellant recognizes that "There is a dirth [sic] of case law involving the application of AR 601–270 at preinduction physical examinations." And we note parenthetically that AR 601–270, § IV, Para. 3–31 deals specifically with registrants who refuse to submit to induction or who are uncooperative. We believe, however, that because of the similarity of the provisions of AR 601–270, § II, Para. 3–5(c), quoted in the margin, f.n. 2, supra, and AR 601–270, § IV, Para. 3–31 referred to above, the principles promulgated by the foregoing decisions, insofar as they bear upon the duty to counsel and advise registrants who refuse to submit to induction, are applicable to situations where the registrant refuses to submit to a physical examination.

However, it does not follow that the teachings of *Chernekoff*, apparently the leading case on the issue, mandates a reversal of the judgment in this case. Regulation 601–270 is "designed to avoid ambiguity in cases of refusal to submit

to induction" and to other duties under the Selective Service Act. United States v. Trimm, supra, at 1148. It therefore gives "a registrant a last clear chance to change his mind," Chernekoff v. United States, supra, at 725, and "confronts a registrant with the necessity of acting, either by proceeding to comply with induction [or examination] instructions or by refusing to do so." United States v. Trimm, supra, at 1148. This procedure is required by the Army to insure "that the moment he becomes liable for civil prosecution be marked with certainty." Chernekoff v. United States, supra, at 725. In other words, the purpose of the regulation as it pertains to preinduction examinations[4] is to force registrants into unambiguous refusals in order to preclude their later assertion that the lack of clarity of their conduct prevents a finding that they actually refused, or intended to refuse, to submit to the examination.

The focus of Chernekoff and its progeny has therefore not been to erect a technical requirement the omission of which is a complete defense to prosecution under § 462. Rather the focus has been on whether the registrant's conduct was sufficiently unambiguous to obviate adherence by Army officials to the prescribed procedures. The Chernekoff court explained this rule with the following observation: "This ceremony must be conformed to *unless the selectee himself makes it impossible, as in the case of* Williams v. United States, *supra,*[5] *or unnecessary as in* Bradley v. United States, *supra.*"[6] 219 F.2d at 725. (Emphasis supplied.) In United States v.

Rucker, 435 F.2d 950, 952 (8th Cir. 1971), we made this observation in regard to AR 601–270: "Of course, this requirement is not part of the Selective Service Act itself. Nevertheless, because of its mandatory language, the Ninth Circuit has held that failure to comply with the regulation, *where such failure is not caused by the action of the registrant,* is a valid defense to a charge of failing to submit to induction." (Citing Chernekoff v. United States, supra; Parrott v. United States, 370 F.2d 388 (9th Cir. 1966); and United States v. Kroll, supra.) (Emphasis supplied.)

Viewed in light of the foregoing, the controlling facts of *Chernekoff* are readily distinguishable from those in the present case. In *Chernekoff* the registrant, while at the induction station, signed a statement that he refused to submit to induction and he then left. In that posture, the Ninth Circuit said the statement signed by the registrant "amounts to no more than testimony that someone heard appellant say he would refuse to be inducted except that a statement in writing is more easily proved." 219 F.2d at 725. The court therefore held that the induction officials were not in that case presented with circumstances sufficiently clear to excuse the failure to follow AR 601–270 and force the registrant into a less ambiguous refusal.

We refrain from engaging in a needless discussion of the other cases relied upon by appellant. We have given them deliberate consideration and are firmly convinced that because of the obvious difference in the facts, they are not dispositive of the problem under consideration here.[7] We agree with Judge Ne-

---

4. As to induction, the ceremonial procedure of the step forward has the additional purpose of marking with clarity the moment the inductee becomes subject to military jurisdiction if he submits rather than refusing to submit. See Chernekoff v. United States, supra, and Corrigan v. Secretary of Army, 211 F.2d 293 (9th Cir. 1954).

5. 203 F.2d 85 (9th Cir. 1953).

6. 218 F.2d 657 (9th Cir. 1954).

7. At oral argument our attention was directed to an order entered in United States v. Torres-Gil, Crim. No. 70–831 (N.D.Cal. May 28, 1971). That court held that the warning pursuant to AR 601–270, § IV, Para. 3–31 was an essential prerequisite to prosecution for failure to report for induction "under the facts of this case." It is clear that the facts confronting that court are distinguishable from the aggravated situation in the present case.

ville who, in his memorandum opinion denying appellant's motion for judgment n. o. v., distinguished those same cases with the following observation:

"In none of these cases, however, were there situations where the defendant himself had caused or contributed to a disruption or disturbance and had left the locale. The court cannot believe that as a requirement the government must stand and read regulations to a man who is holding his hand high with flaming induction papers before he can be charged with an offense; nor is it necessary that the army authorities as to an inductee who refuses to be processed and leaves the room or is necessarily aided in leaving the room must run down the hall and attempt to read a regulation to him and holler to him while he is walking away or engaging in conversations with protestors and others in the hallways. Both counsel agreed that the army personnel have no authority to arrest the defendant nor to compel his sitting down in a room or remaining still, even in the hallway, while a regulation is read or while warnings are given."

More in point is United States v. Meyers, 410 F.2d 693 (2d Cir.), cert. denied 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 86 (1969). Neither appellant nor the government cited the *Meyers* case. There, the inductee created a disturbance at the induction center sparked by his persistence in handing out anti-Vietnam literature to the men assembled in the induction room. Meyers was finally physically removed by the military police to the Provost Marshal's office. He was convicted of willful failure to report for and submit to induction. Relying on the *Chernekoff* case, Meyers contended on appeal that the evidence of his intent to refuse was insufficient absent the choice forced by AR 601–270 of actually stepping forward or refusing to do so. The court held that "the evidence was sufficient to support an inference that appel-

lant had culpable intent not to submit to induction." 410 F.2d at 695.

■ The circumstances in *Meyers* are clearly apposite the present case. However, by approving submission to the jury of the question whether the circumstances excuse the failure to follow the procedure in the regulation, we do not intend to promulgate a rule that culpable intent, without more, is sufficient to permit this procedural omission. Rather we hold, as both the *Chernekoff* and *Meyers* courts held, that response to an order after counseling pursuant to AR 601–270 "is not the only type of evidence which will suffice to show that a registrant has knowingly chosen not to comply * * *" United States v. Trimm, supra, at 1148, citing *Meyers*, supra; and that the failure to follow the regulation is excused whenever the registrant's conduct is sufficiently unambiguous to render those clarifying actions unnecessary or creates a situation which renders it impractical, if not impossible, for the examining authorities to comply with the regulation. As the *Chernekoff* court said, compliance is required "unless the selectee himself makes it impossible * * * or unnecessary * * *." 219 F.2d at 725.

Of course, intent ordinarily is provable only by the outward manifestations thereof. Therefore, a jury determination that a registrant's conduct constituted a clear refusal is simultaneously a determination of the clarity of his culpable intent. However, this truism poses no difficulty of analysis. Whether the conduct of a registrant is clear enough to support a jury finding dispensing with AR 601–270 is a matter governed by the familiar rules on the submission of fact questions to juries. In the final analysis, each case must be judged in light of the facts presented.

■ We therefore conclude, in light of all of the facts and circumstances, that the district court proceeded properly in submitting the question at hand to the jury and in denying the motion for

judgment n. o. v. It is abundantly clear that the appellant was fully aware of the regulation which he now seizes upon in attempting to be exonerated. Moreover, it is obvious that appellant went to the examining station on the morning of July 11 with the culpable intent not to submit to an examination. Some of his associates who were present on the eventful morning indicated in their testimony that they knew he did not intend to submit to an examination. We suspect that the appellant made a deliberate choice. The inference is quite clear that he intended to create a disturbance and make it impractical, if not impossible, for the officials to convey any warnings to him, and then to seize upon this technicality in an effort to escape punishment for his transgression of the law.

Appellant also contends here, for the first time, that there was no basis in fact for the denial to him of a I-O classification, and that persons classified I-O may not be prosecuted for refusal to submit to a pre-induction physical examination. From this premise, he marshals the argument that the alleged mis-classification constituted a complete defense to Count III.

This belated claim of error, apparently an afterthought, was not an issue in the trial court. Aside from the introduction into evidence of appellant's Selective Service file, there was no evidence whatsoever and no claim made that the failure of the appellant's local board and the appeal board to grant his request for a I-O classification served to relieve him of the duty and obligation to report for the physical examination. Not only did the appellant and the attorney who assisted him in the trial ignore this issue during the trial itself, but in the post-trial motion prepared by the attorney for judgment of acquittal n. o. v. or in the alternative for a new trial, the issue now presented to us was not asserted. Therefore, the district judge, not having had the matter called to his attention, did not discuss the question in his memorandum opinion denying appellant's after-trial motion.

The appellant nevertheless submits that introduction of his Selective Service file which contained his SSS Form 150 was, without more, sufficient to direct the propriety of his classification to the attention of the court, and that the court was thereupon required *sua sponte* to decide the question of whether appellant had been improperly retained in class I-A. The settled law of this circuit, however, is clearly contrary to appellant's contention. The recent opinion of this court in United States ex rel. Huisinga v. Commanding Officer, 446 F.2d 124 (8th Cir. 1971), deals with the scope of review on appeal. Judge Heaney in speaking for the court stated: "It is an elemental rule of appellate jurisdiction that a reviewing court will not ordinarily rule on issues not properly presented or raised in the trial court." Judge Heaney cites a number of our cases in support of this rule. We believe fairness dictates that if the appellant had conscientiously relied upon the point now raised, that he should have called this matter to the attention of the district court, in order to afford that court an opportunity to consider and pass upon the question.

■ An equally cogent reason for rejection of appellant's thesis flows from the rule that an improper classification is no defense to a prosecution for refusing to submit to the pre-induction physical examination. Appellant relies upon 32 CFR § 1660.20 which provides in effect that persons classified I-O who refuse to submit to the physical are to be expeditiously ordered to alternative service rather than being prosecuted. Here, however, appellant had not been classified I-O but occupied a I-A classification at the time he was ordered to report for the physical. Appellant's reliance upon 32 CFR § 1660.20 must therefore rest upon the premise that registrants erroneously classified by the Selective Service System need not obey interim orders to which they could not be subjected if they had been placed in a classification which exempted them from induction into service. Inasmuch as appellant was I-A, 32 CFR § 1628.10 is applicable. It provides

that before a registrant can be ordered to report for induction, or ordered to perform civilian work contributing to the maintenance of the national health, safety or interest, he must receive an Armed Forces physical examination. In a situation somewhat analogous to our case, the Supreme Court ruled that a registrant is under a duty to comply with the order to report for a physical examination, citing 32 CFR §§ 1628.10 and 1628.-11, and that he may be criminally prosecuted for failure to comply. And finally the court stated, "[a]n invalid classification, if allowed to be raised, would have been a complete defense to that prosecution (failing to report for induction); it would not be a defense today to a prosecution for failure to report for a pre-induction examination." McKart v. United States, 395 U.S. 185, 203, 89 S.Ct. 1657, 1667, 23 L.Ed.2d 194 (1969). United States v. Zmuda, 423 F.2d 757 (3rd Cir.), cert. denied 398 U.S. 960, 90 S.Ct. 2176, 26 L.Ed.2d 545 (1970), stands squarely for the proposition that a registrant who claims he was improperly classified must nevertheless report for a physical examination and is subject to prosecution if he fails to do so. Thus, assuming arguendo, that appellant had been erroneously denied a I-O classification, he was nevertheless required to submit to the physical.

The government also contends that the local board and the appeal board properly rejected appellant's claim for conscientious objector status arguing that his SSS Form 150 and his personal appearance before the local board demonstrated objection only to the war in Vietnam and not opposition to war in any form. Gillette v. United States, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971). While there appears to be merit in the government's contention, we pretermit further consideration of that facet of the government's argument.

In summary, we find no rational basis for interference with the judgment and, accordingly, we affirm.